### P. L. HOOPER V. THE STATE.

No. 8208.  Delivered June 24, 1925.

Rehearing granted December 2, 1925.

**1.—Misappropriating County Funds—Indictment—Held Sufficient.**

Where on a charge of misappropriating county funds, it is not necessary for the indictment to charge that there was a fraudulent disposition of the property of the county. This view is based upon the phase of the statute which forbids an officer of the county to pay or deliver the property of the county to any person, knowing that such person is not entitled to receive it. See Cyc. of Law & Prac. Vol. 29, p. 1450.

**2.—Same—Continued.**

The terms "embezzlement" and "misapplication of public funds" are not synonymous. Embezzlement involves the fraudulent conversion. Misapplication of public funds by an officer under whose control they are placed by law, may or not be fraudulent. See Cyc. of Law & Prac. Vol 29

p. 796; Words & Phrases, Vol. 3, p. 401, also Cyc. of Law & Prac. Vol. 29 p. 1450, and cases cited in note 62.

### 3.—Same—County Bonds—Ownership in County—Statute Construed.

Under Art. 632 Revised Civil Statutes relating to the issuance and approval of county road bonds, vests the ownership and control of the proceeds of the sale of such bonds in the Commissioner's Court of such county whether such funds belong to the entire county or to a subdivision of the county, and they cannot be paid out or distributed without the approval of the Commissioner's Court. On the facts in the present case, we think the averment and proof of ownership in the county was sufficient.

### 4.—Same—Charge of Court—Held Correct.

Where on a trial for misappropriation of county funds, the court charged the jury that if they believed from the evidence that appellant unlawfully delivered the bonds to Twing and that the said defendant at the time of such delivery well knew that the said E. L. Twing was not entitled to receive them, they would find him guilty. The converse of the proposition having also been submitted, the charge is held correct.

### 5.—Same—Elements of Offense—Statutes Construed.

Under Art. 105 P. C. it is made a penal offense for a Commissioner's Court or any member thereof to deliver bonds of the county to any person, knowing that the person so receiving them is not entitled to have them. The manner in which the money is averred to have come into the possession of appellant is not important, nor is the failure to prove that it came into his possession by an order of the Commissioners' Court deemed determinative of the issues. Each member of the Commissioners' Court taking part in such an act, renders himself amenable to prosecution, either by separate indictment, or under a joint indictment of the entire court.

ON REHEARING.

### 6.—Same—Evidence—Held Insufficient.

On rehearing appellant earnestly insists that the evidence in the case is not sufficient to sustain the conviction, in that the delivery of the bonds to Twing & Co. was not his act, but was the official act of the Commissioner's Court of Shelby County. Our original opinion was directed mainly to the legal questions presented, and a careful scrutiny of the facts, or rather the lack of facts, impels us to agree with his contention.

### 7.—Same—Continued.

There is no suggestion in the record that appellant received a penny directly or indirectly from Twing or anybody else for what he did in his efforts to effect the sale of the bonds. There is not a suggestion that he was in San Antonio when the bonds were delivered to Twing, if they ever were. It is not claimed that he fraudulently took, or misapplied the bonds, the only claim on the facts being that he fraudulently delivered them to Twing. We fail to find any evidence that he delivered them, much less that he fraudulently delivered them to Twing, and the cause is reversed and remanded for the insufficiency of the evidence.

Appeal from the District Court of Shelby County. Tried below before the Hon. Chas. L. Brachfield, Judge.

Appeal from a conviction for the misappropriation of county funds, penalty two years in the penitentiary.

The opinion states the case.

*J. G. Woolworth* and *B. W. Baker,* of Carthage, for appellant.

Tom Garrard, State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Conviction is for the misappropriation of county funds; punishment fixed at confinement in the penitentiary for a period of two years.

Appellant was one of the county commissioners. Bonds in the sum of $350,000.00 were issued for the purpose of constructing public roads in Road Districts Nos. 4 and 7 in Shelby County. Both of the road districts named were in the commissioner's precinct represented by the appellant. On April 12, 1920, E. L. Twing appeared before the Commissioner's Court and presented thereto a written proposal of E. L. Twing & Company to purchase the bonds, offering to pay par value for them. From this proposal the following quotations are taken:

"As soon as the bonds are approved by the Attorney General and registered by the Comptroller, said bonds shall be placed in the Commercial State Bank of San Antonio, Texas, in escrow, subject to our orders.

"As soon as our attorneys, Messrs. Wood & Oakley, have approved said issues, we agree to take up and pay for, and remit to the county, as follows:"

Following the words last quoted, the proposal stated in substance payment to be made in five annual installments ranging in amount from $35,000.00 to $80,000.00. In an order on its minutes, it is stated:

"The above and foregoing offer has this day been accepted by the Commissioners' Court of Shelby County, Texas, and the bonds are accordingly sold to E. L. Twing & Co., of San Antonio, Texas, upon the terms and conditions hereinabove stated."

It appears from the oral testimony that in November following the making of the contract to which reference has been made that E. L. Twing appeared in Center, Texas, the county seat of Shelby County, and got in communication with the appellant Hooper. A special meeting of the Commission-

ers' Court was held at which were present the county judge, the appellant and Commissioner May. It was there revealed that the Commercial State Bank of San Antonio, into whose custody the bonds had been placed, had refused to deliver them to Twing & Company, and the purpose of the meeting of the Commissioners' Court, as announced by the county judge, was to pass an order such as would enable Twing & Company to get possession of the bonds and absolve the bank from any liability for releasing them. Twing stated to the court that the bank had refused to deliver the bonds to him so that he could go to the eastern market and sell them, and that he wanted an order passed by the court authorizing the bank to turn the bonds over to him so that he could handle them. From this witness it appears that after the meeting was called, Twing prepared an order of the Commissioners' Court which was entered upon the minutes, from which minutes we take the following quotations:

"In the matter of the Sale of Bonds of Road Precinct No. 4 and No. 7, to E. L. Twing & Company.

"On this the 19th day of November, A. D., 1920, the Court having entered into a supplemental agreement or contract with reference to the above-mentioned transaction, it is ordered, adjudged and decreed that said supplemental agreement or contract be now entered upon the Minutes of the Court in connection with this order, and that the same be ordered and adjudged to express the contract with said Twing & Company so far as covered by its provisions."

This order recites that on the 12th day of April, 1920, Shelby County, Texas, through its Commissioners' Court, sold to E. L. Twing & Company of San Antonio, Texas, bonds of Road Districts Nos. 4 and 7, aggregating $350,000.00, the same to be placed in the Commercial State Bank of San Antonio, subject to the orders of E. L. Twing & Company; and that $35,000.00 shall be paid to the Treasurer of Shelby County within a reasonable time after the approval of the legality of the bonds. The order further states:

"Now, Therefore, Be it ordered and decreed by this Commissioners' Court that the said E. L. Twing & Co., of San Antonio, Texas, has fully complied with the terms of said contract up to date, and hereby acknowledges receipt of payment for the year 1920, and that any part or all of the unsold bonds of both Road Districts No. 4 and No. 7 of Shelby County, Texas, which now are in the vaults or in the possession of the Commercial State Bank of San Antonio, Texas, may be with-

drawn from said bank by the said E. L. Twing & Co., of San Antonio, Texas, and that no further responsibility shall be attached to the Commercial State Bank, and the said Bank is hereby released from all further responsibility of whatsoever kind or nature to Shelby County, Texas, for the safe keeping of said bonds, and said unsold bonds may be placed by E. L. Twing & Co., in some other bank for safe keeping as against loss by fire or destruction.

Witness our hands, on this the 19th day of November, A. D., 1920.

> J. L. King, County Judge,
> W. M. May, Commissioner
> Precinct No. 3,
> P. L. Hooper, Commissioner
> Precinct No. 4."

WHEREAS, on said date said bonds were delivered to the said Twing & Company and said first payment was duly made to the County, the receipt whereof is hereby acknowledged; and

WHEREAS, the said E. L. Twing & Company deposited said bonds with the Commercial State Bank of San Antonio, Texas; and

WHEREAS, it was not contemplated that said Commercial State Bank should assume any obligation other than to furnish its vaults to the said Twing & Company for the safe keeping of said bonds so as to prevent the loss or destruction of said bonds; and

WHEREAS, all parties desire that the bank's duties be clearly specified and it is deemed proper and desirable that this be done;

NOW, THEREFORE, it is hereby agreed by and between the said Commissioners' Court and said Twing & Company that the only duty put upon said bank is to use reasonable care to safely keep and preserve said bonds from loss or destruction *and to deliver them to said Twing & Company when demanded by them.*

It is further agreed that said Twing & Company shall pay for said bonds over the period of time specified in said contract."

Pursuant to these orders, Twing obtained the bonds from the Commercial State Bank of San Antonio, Texas, and on July

12, 1921, paid to the county $45,000.00 on account. Nothing was paid in the year 1922.

As we understand the record, the delivery of the bonds to Twing was a short time before the termination of the appellant's term of office. There is testimony to the effect that he was influenced in the matter of putting the bonds in the hands of Twing by the desire to withdraw them from the control of his successor in office, who seems to have been elected. There is revealed in the statement of facts various subsequent efforts of the county officials to prevent or minimize the loss to the county consequent upon the transaction wherein the bonds were delivered to Twing. A recital of these matters is not deemed necessary.

The indictment is assailed in several particulars. These embraced the proposition that in failing to charge the fraudulent disposition of the property, the indictment is faulty; that the bonds were not the property of the county and therefore not embraced within the purview of the penal law upon which the prosecution is founded; that because of the nature of the transaction the custody of the bonds did not come under the control of the commissioners of the county by virtue of their office; that the act performed was discretionary and within the scope of the authority of the appellant and therefore not actionable in a criminal proceeding. We conceive that none of these propositions are sound.

The Statute upon which the prosecution is had reads thus:

"If any officer of any county, city or town in this State, or any clerk or other person employed by such officer, shall fraudulently take, misapply or convert to his own use any money, property or other thing of value belonging to such county, city or town, that may have come into his custody or possession by virtue of his office or employment, or shall secrete the same with intent to take, misapply or convert it to his own use, or shall pay or deliver the same to any person knowing that he is not entitled to receive it, he shall be punished by confinement in the penitentiary for a term not less than two nor more than ten years." (Art. 105, P. C.)

From the indictment we take the following quotation:

"Said P. L. Hooper then and there well knowing that the said E. L. Twing was not entitled to receive said bonds in that the said E. L. Twing had paid no valuable consideration for the delivery of same; said bonds being then and there legal obligations of the road districts aforesaid in the amounts aforesaid of the value aforesaid, respectively and collectively;

said bonds then and there being the property of and belonging to said road districts and County aforesaid, and which said bonds had theretofore come into and then and there was by virtue of said delivery by said Commissioners' Court in the custody and possession and under the control of the said P. L. Hooper, by virtue of his said office."

In order to bring one within the purview of the Statute mentioned, it is conceived that an averment of fraud is not essential. This view is based upon that phase of the Statute which forbids an officer of the county to pay or deliver the property of the county to any person, the officer knowing that the person to whom the property is delivered is not entitled to receive it. Cyc. of Law & Proc., Vol. 29, p. 1450. The terms "embezzlement" and "misapplication of public funds" are not synonymous. Embezzlement involves the fraudulent conversion. Misapplication of public funds by an officer under whose control they are placed by law may or may not be fraudulent. See Cyc. of Law & Proc., Vol. 27, p. 796; Words & Phrases, Vol. 3, p. 401; also Cyc. of Law & Proc., Vol. 29, p. 1450, and cases cited in note 62.

The claim that the misapplication of the road bonds was not covered by the Statute denouncing the offense because the ownership was not in the county, we think is refuted by the terms of Art. 632 of the Revised Civil Statutes. That article, after declaring that road bonds, when issued, shall be submitted to the Attorney General of the State, and upon his approval shall be registered by the Comptroller of Public Accounts, contain this language:

" * * * and such bonds, when so issued, shall continue in the custody of and under the control of the commissioners' court of the county in which they were issued, and shall be by said court sold to the highest and best bidder, for cash, either in whole or in parcels, at not less than their par value, and the purchase money therefor shall be placed in the county treasury of such county to the credit of the available road fund of such county, or of such political subdivision or defined district of such county, as the case may be. * * *

Such funds shall be paid out by the county treasurer upon warrants drawn on such funds issued by the county clerk of the county, countersigned by the county judge, upon certified accounts approved by the commissioners' court of the county; when such funds belong to the entire county; and, when such funds belong to a political subdivision or defined district of the county, they shall be paid out by the county treasurer

upon warrants issued by the county clerk, upon certified accounts of the road superintendent of such road district, *and approved by the commissioners' court of the county."*

On the facts of the present case, we think the averments and proof of ownership in the county were sufficient.

The court instructed the jury in substance that if they believed from the evidence that the appellant unlawfully delivered the bonds to Twing, and "that the said defendant, at the time of the delivery of said road bonds well knew that the said E. L. Twing was not entitled to receive them," they would find him guilty. The converse of this proposition is contained in the charge.

As viewed by the writer, the part of the indictment touching the manner in which the property is averred to have come into the possession of the appellant is not important; nor is the failure to prove that it came into his possession by an order of the Commissioners' Court deemed determinative of the issues. The indictment charges and the proof shows that the bonds were issued by the Commissioners' Court, signed by them, and by them put under the control of E. L. Twing, that in doing so, the Commissioners' Court did what both the civil and criminal Statutes of the State denied the right to do. The essence of the case is that the appellant, being a member of the Commissioners' Court, was an actor in delivering the bonds to Twing without payment therefor, a transaction which upon its face was violative of that part of the criminal Statutes which forbids the delivery of the bonds by the Commissioners' Court or any member thereof, to any person, knowing that the person so receiving them was not entitled to have them. (See Art. 105, P. C., supra.)

In the mind of the writer, each member of the Commissioners' Court taking part in such an act rendered himself amenable to prosecution, which prosecution could by the State be maintained against each by separate indictment or against all by a joint indictment. Nor do we understand that the appellant is exempted from prosecution because the act was within the scope of his authority. As we understand the express terms of the Statute, both the civil and criminal, the Commissioners' Court was without discretion to deliver the bonds in question to the purchaser thereof except upon payment therefor in cash or its equivalent.

The various bills of exception but reiterate the points urged against the indictment. Additional discussion of the points made by appellant is not deemed necessary or desirable.

Believing the verdict to find support in the law and evidence, and perceiving no errors of a harmful nature in the procedure, we order that the judgment be affirmed. *Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Upon original consideration our attention was directed to the legal questions raised by appellant upon which he seemed to rely mainly for reversal. Our former opinion dealt chiefly with the legal questions involved. In considering this motion we have been called upon to give mature and careful scrutiny to the facts, or rather the lack of them appearing in the record.

The gist of the charge against appellant, as stated in the indictment, is that he "being the custodian of the hereinafter described bonds, did then and there fraudulently take, misapply and deliver to E. L. Twing" said described bonds. In order to support a conviction upon such an allegation there must be proof of some character of fraudulent taking, misapplication or delivery. In this connection we state that our conclusion announced in the original opinion, that an averment of fraudulent intent was not essential, should be qualified. The indictment in the present instance does charge a fraudulent intent and thereby imposed upon the state the burden of proving such intent. We have concluded that the state has not discharged that burden. It, therefore, becomes unnecessary to determine whether, under a proper construction of the statute quoted, one in an official position might be convicted if he delivered property belonging to the county to a person, knowing at the time that such person was not entitled to receive it, such delivery being made without fraudulent intent on the part of the officer. We have searched this record again and again for some proof showing a fraudulent intent on the part of appellant, or at least suggesting such fact, but we have been wholly unable to find same.

It is plain from this record that the commissioners court of Shelby county entered into a contract with Twing & Company, represented by E. L. Twing, in April 1920, to sell said Twing & Company a large number of road bonds theretofore issued by two road districts in said county. Twing & Company made a written proposal to said commissioners court for the purchase of said bonds, stating what they would give and the conditions under which they would make the purchase. Under the proposition Twing & Company were to print the bonds, have them approved and registered, and should pay $35,000.00 cash and the remainder in five annual installments, and that when the bonds

had been approved and registered they should be placed in the Commercial State Bank of San Antonio, Texas, "subject to our orders." This proposition, signed by Twing & Company per E. L. Twing, was accepted officially by the Commissioners' Court, whose order of acceptance, as same appears in evidence, contained this statement: "Upon the terms and conditions stated." Twing & Company had the bonds printed and approved by attorneys, took them to the county seat of Shelby County where they were formally signed by the county judge, the county clerk and the county treasurer, and the seal of the court was placed on them, and they were taken presumably by Twing to the proper state officers at Austin for approval and registration. An inference is indulged that they were taken from Austin to the bank at San Antonio and there deposited, though no witness swears to this fact. It is however shown that in November, 1920, Twing reappeared in Shelby County seeking an order from the Commissioners' Court directing said bank to deliver said bonds to him. Two of the commissioners acting with the county judge, a quorum of the court, entered such order. Appellant was one of the two commissioners present when this was done. The road districts in question were in the commissioner's precinct of appellant and he seemed especially anxious to make the sale of the bonds. Munnerlyn, one of the four commissioners of the county, testified on this trial and said he was not present at the November meeting because sick in bed, though a car was sent for him. Mr. Oliver, who was the fourth commissioner of said county, did not testify, nor was there given any reason why he did not attend said November meeting. At said meeting of the Commissioners' Court a supplemental order was made reciting that the court had sold the bonds to Twing & Company in April and that same were to be placed in the Commercial State Bank at San Antonio, Texas, "subject to the orders of E. L. Twing & Company", and that as per said agreement $35,000.00 was to be paid, etc., which payment had been duly made, the receipt of which was acknowledged, and further that Twing & Company deposited said bonds with the Commercial State Bank at San Antonio, and that the bank's duties in the matter had not been clearly specified. It was further stated in said order that the only duty put upon the bank was to use reasonable care to safely keep and preserve said bonds and deliver them to said Twing & Company "when demanded by them". The substance of this order was embraced in a supplemental contract. It was further agreed in said supplemental contract that Twing & Company should pay

for said bonds over the period of time specified in the original contract. This supplemental contract evidenced by the order was signed J. L. King, County Judge, Shelby County, Texas; E. L. Twing & Co., by E. L. Twing.

Manifestly no charge of a fraudulent delivery, taking or misapplication of said bonds could be made against appellant predicated upon the transaction had in the Commissioners' Court in April. It is not shown that he was present or participated in the execution of the bonds by the county judge, the county treasurer and the county clerk; nor had such bonds been then approved by the Attorney General or registered by the Comptroller at Austin. The inference from the testimony is that when the bonds were signed by the officers of Shelby County, Twing & Company took them to Austin, had them registered and approved and took them to San Antonio.

There is not a suggestion in this record that appellant received a penny directly or indirectly from Twing or anybody else for what he did in his effort to effect the sale of these bonds. There is not a suggestion that he was in San Antonio when the bonds were delivered to Twing, if they ever were. We cannot concern ourselves with the carelessness of the transaction under discussion, nor the lack of business judgment on the part of the whole Commissioners' Court in the contract they made with Twing & Company. If a county sees fit to elect commissioners who will make a sale such as evidenced by this contract, that is its business. We are only concerned with the proposition here that the record fails to show any fraudulent intent on the part of this appellant in the transaction. It is not claimed that he fraudulently took or misapplied the bonds. The only claim on the facts is that he fraudulently delivered them to Twing. We fail to find any evidence suggesting that he delivered them much less that he fraudulently delivered them to said Twing.

Being convinced of the correctness of this conclusion from careful examination of the record, we believe that the affirmance of this case should be set aside and the judgment of the trial court now reversed and the cause remanded, and it is so ordered.

*Reversed.*